IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL D. CROUCH, | § |
|     Plaintiff, | § |
| | § |
| v. | § No. 3:04-CV-2281-AH |
| | § |
| AETNA LIFE INS. CO., | § |
|     Defendant. | § |

MEMORANDUM OPINION AND ORDER

Pursuant to the written consents of the parties to proceed before a United States Magistrate Judge and the District Court's Transfer Order filed on February 25, 2005 in accordance with the provisions of 28 U.S.C. § 636(c), came on to be considered Defendant Aetna Life Insurance Company (Aetna)'s motion for summary judgment, Plaintiff Michael D. Crouch (Crouch)'s response, Aetna's reply, and Crouch's response to Aetna's reply.

I. Factual Background

Crouch brings this action under 29 U.S.C. § 1132(a) to recover long term disability benefits under a group insurance policy issued by Aetna to Anderson Worldwide, S.C. He contends that Aetna wrongfully terminated the long term benefits that he was entitled to under the group insurance policy.

Crouch began experiencing back and neck pain in 1996. In October 1998 he began receiving disability payments from Aetna. By letter dated November 20, 2003, Aetna informed Crouch that they intended to terminate his disability benefits. Crouch appealed this determination, and by letter dated May 13, 2004, Aetna informed Crouch that it had decided to uphold the determination. Therefore Crouch filed this action on October 22, 2004.

1

II. Summary Judgment – standard of review

To prevail on a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10 (1986). The materiality of facts is determined by substantive law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994)(citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has made an initial showing, the party opposing the motion for summary judgment may not merely rely on his pleadings, but must come forward with competent evidentiary materials that establish a genuine fact issue. *Anderson*, 477 U.S. at 256-257, 106 S.Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56 (1986). Neither conclusory allegations nor hearsay statements are competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the opponent's claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The court must resolve any factual controversies in favor of the non-moving party. *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). Thus, in reviewing all of the evidence, the court must consider it in a light most favorable to Plaintiff's claims, drawing all factual inferences therefrom and making all credibility determinations related therefrom in his favor.

However, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

### III.  Standard of review

In general, the application of the abuse of discretion standard is a two- step process, wherein a court first determines the legally correct interpretation of a plan and second, if the administrator did not apply the legally correct interpretation, determines whether the administrator's actions constituted an abuse of discretion. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir.1992).

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956-57 (1989) the Supreme Court held that in reviewing the denial of a claim for benefits under ERISA that:

> ...[A] denial of benefits ... is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan ... Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse in discretion.

In the present case issue is not joined on the correct interpretation of the plan.  Likewise it is undisputed that Defendant was granted the discretionary authority to determine benefits eligibility.  Finally it is clear that Aetna as the claims administrator had a financial interest in the claims paid under the group policy.

In light of the qualification imposed in *Bruch*, the Fifth Circuit addressed the issue of how a court was required to review the decision of a "conflicted claims administrator" with discretionary authority in *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287 (5th Cir. 1999)(en

banc). After surveying decisions of other circuit courts, the court reaffirmed the "sliding scale" standard set out in the *Wilbur* case. Specifically the Court stated:

> The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of a conflict on the part of the administrator, the less deferential our abuse of discretion standard will be. *Id.* at 297.

Although the Fifth Circuit has not identified any talismanic markers to be considered in determining what amount of deference is to be given to the decision of a conflicted claims administrator, in the more recent case of *MacLachlan v. Exxonmobil Corp.*, 350 F.3d 472, 479 (5th Cir. 2003), the Court stated: "The degree to which a court must abrogate its deference to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claims that there is a conflict."[1]

In attempting to demonstrate the existence of a conflict on the part of Defendant, Crouch presents three circumstances and has submitted his supporting affidavit. (*See* Pl.'s Appx. A

---

[1] The continuum of the sliding scale runs from "only a modicum less deference" to the administrator's decision, *See Vega*, 188 F.3d at 301, to a "near *de novo* review." *Bourgeios v. Prentiss Properties Ltd., Inc.,* 31 Fed. Appx. 838, 2002 WL 261447 *2, *2 n.9 (5th Cir. Jan. 31, 2002). A survey of district court opinions from the Fifth Circuit reflects that in a majority of cases in which the administrator also funded the plan, and absent additional circumstances, at most "only a modicum less deference" is given to the administrator's decision. *See, e.g.,Wyatt v. AMEC Choices Benefits Program Long Term Disability Ins. Plan,* 2005 WL 1186114 (S.D. Tex. May 19, 2005), *Cuevas v. The Prudential Ins. Co.*, 2005 WL 1027190 (S.D. Miss. March 26, 2005), *Matney v. The Hartford Life Ins. Co.*, 2004 WL 3187081 (N.D. Tex. Dec. 27, 2004),*Graham v. L & B Realty Advisors, Inc.*, 2003 WL 22388392 (N.D. Tex. Sept. 30, 2003); *but see Miles v. AIG Life Insurance Co.*, 2005 WL 147387 *4 (E.D. La. Jan. 21, 2005), finding that when the insurer and the plan administrator are the same, the degree of conflict is one hundred percent and therefore the decision was to be given the least amount of deference allowed. However, the court subsequently found in the case that the administrator did not abuse its discretion. 2005 WL 1038668 *6 (Apr. 22, 2005).

filed with his response "Pl.'s Appx. A").[2]

Specifically, he alleges that Aetna relied on an inherently flawed surveillance report which it knew or should have known was untrustworthy, required Crouch to travel over one hundred miles to Paris, Texas for a medical evaluation, and failed to communicate its decision to Crouch until nearly 120 days after his appeal.

Taking his arguments in reverse order, Crouch represents that he did not receive notice of Defendant's denial of his appeal within the forty-five day period prescribed by regulation 29 C.F.R. § 2560-503-1(i), based upon his affidavit that the denial, although dated May 13, 2004, was not received by him until June 13, 2004. Defendant joins issue on this contention in its reply, asserting that it extended the deadline for review by forty five days as was permitted by the C.F.R. regulations. Addressing this issue in the light most favorable to the claimant, that he did not receive notice of denial until June 13, 2004, it establishes at most an oversight on the part of the administrator, and no inference can be reasonably drawn from such delay to suggest unfairness in the manner in which Defendant determined his claim. Perhaps more to the point Crouch has shown no prejudice from such delay. *See, e.g., Duncan v. Assisted Living Concepts, Inc.*, 2005 WL 331116 *3 (N.D. Tex. Feb. 10, 2005)(collecting cases). Therefore this argument is irrelevant to determining the "conflict of interest" question.

Although Dr. Kyle Jones's office was more than one hundred miles from Crouch's

---

[2]Although a decision on the merits of an ERISA claim is limited to the contents of the administrative record, *See, e.g., Estate of Bratton v. Nat'l Union Fire Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000), in light of the *MacLachlan* case, *supra*, the court is of the opinion that it may consider any competent summary judgment evidence in determining the extent to which a conflict exists and in turn the amount of deference to be given to the administrator's decision.

residence, Defendant had the authority under the contract to designate an examining physician. The choice of a doctor is essentially a neutral factor as it relates to the "conflict of interest" issue.[3]

Finally, Crouch contends that Aetna's surveillance video of his daily activities was inherently unreliable because the investigator's report estimated Crouch's height as 5'8" and his weight at 210 pounds, although Crouch is actually 5'11" to 6' tall and weighs between 300-340 pounds, depending on the time period in which the video was shot.  (*See* Pl.'s Revised Appx.  B at A000607, Pl.'s Appx.  A at 4 ¶ 10).  Although there is no dispute that the videotaped materials were considered in reaching a decision on his claim, there is no basis for concluding that Plaintiff's height and weight as estimated in the investigator's report had any bearing on the decision-making process.  Plaintiff does not dispute the accuracy of the remainder of the investigator's written report, for example that he did not live at the address where the videotape was shot or that the vehicles observed were not then registered to his wife.  Most telling is the fact that Defendant produced to the court and to Plaintiff's counsel a copy of the videotape as part of its summary judgment evidence.  Thus Plaintiff himself had the opportunity to review the videotape and if in fact the subject appearing in the exhibit was not him to have stated the same under oath in his affidavit.  Since he has not done so his unreliability assertion is patently lacking in merit.

Based upon the foregoing finding and applying the sliding scale standard adopted by the

---

[3]Notwithstanding the court's observation in footnote 2, *supra*, absent independent corroboration from Dr. Jones, the court may not consider statements attributed to the doctor by Plaintiff in his affidavit since it constitutes hearsay and further because no such opinion of the doctor is contained in the administrative record.

Fifth Circuit, the court finds that only a modicum less deference should be given to Defendant's determination than would otherwise be due.

IV. Defendant Aetna's Determination

"The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Ellis v. Liberty Life*, 394 F.3d 263, 273 (5th Cir. 2004)(citing *Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 215 (5th Cir.1999)). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis* at 273 (quoting *Deters v. Sec. of Heath, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir.1986)(internal citation omitted)). The Fifth Circuit, in *Ellis*, stated that it was "aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance." *Ellis* at 273.

Aetna has provided evidence which clearly supports a basis for its denial.[4] On December 10, 1997, Dr. Richard R. Vera, M.D., Plaintiff's then treating physician, wrote a letter to Anderson Consulting indicating that he believed that Crouch had limitations from pain, but was not disabled, and recommending a functional capacity evaluation ("FCE") to determine the

---

[4] The administrative record consists of Defendant's Appendix. Plaintiff's Appendix replicates portions of the administrative record except for his affidavit, designated as Plaintiff's Appendix A.

7

extent of Crouch's disability. (Def.'s Appx. at 897-98).[5] On January 20, 1998, Joyce Green, OTR, CHT gave Crouch an FCE. She opined that he had not given maximum, consistent effort while performing the tasks she gave him in the course of the testing procedure. She stated that, because of Crouch's self-limitations in testing, she could not make a comparison of his maximum work abilities with his job requirements. (Def.'s Appx. at 902-06).

On April 14, 2003 Gerry Areghini, RN, CNOR, CCM, a case file manager, filled out a report on Plaintiff, based on his medical records and an interview with Crouch. Under medical history, she reported that Plaintiff had awakened on May 28, 1996, with terrible pain in his neck. On December 2, 1997, he had a cervical discectomy at C6-7 and a removal of a bone spur for degenerative disease. On January 18, 1998 he had a FCE in which the evaluator opined that Plaintiff was self-limiting during the examination and that he was magnifying his symptoms. Plaintiff, at the time of Ms. Areghini's report, was being treated by Dr. Richard C. Jones. At that time he was taking alprazolam,[6] Gemfibrozil,[7] Celebrex, Prevacid for gastritits, Paxil, and Allegra. Plaintiff had previously taken OxyContin for six years and hydrocodone or Vicodin. He had also taken cyclobenzaprin[8] and Ambian for sleep. Plaintiff reported that Dr. Jones was

---

[5] Since these records come from the administrative record, the pagination from Defendant's appendix is used for the sake of clarity.

[6] A benzodiazepine used to treat anxiety disorders and panic attacks. Medline Plus *at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a684001.html.

[7] "[U]sed to lower cholesterol and triglyceride (fat-like substances) levels in the blood." Medline Plus *at* http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202256.html.

[8] A muscle relaxant. *See* Medline Plus *at* http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202172.html.

considering putting him on Depakote[9] but that he had not yet started it. Ms. Areghini noted that Plaintiff's prior treatment had included epidural steroid injections and pain management follow-up, with an EMG and FCE. On April 6, 1999 he had a medical examination at which a doctor noted that his inappropriate pain responses were a manifestation of chronic pain syndrome and that he needed psychological evaluation and support to get himself out of his current pain pattern. Ms. Areghini spoke to Dr. Richard Jones, who told her that his treatment goal for Plaintiff was to keep him as functional as possible without the use of heavy medication like OxyContin. Dr. Jones indicated that Plaintiff's pain was subjective and that he had problems with symptom magnification. Plaintiff indicated that he was in severe pain of approximately 9 on a scale of 1-10. His pain started from the base of his skull and radiated down his neck into both arms. Dr. Jones stated that he had no idea what Plaintiff's vision problems were, but that Plaintiff had reported to him that looking at a computer monitor screen for longer than 5 minutes bothered his eyes. Ms. Areghini opined that Plaintiff had determined that he was not going to go back to work and that he would be on long term disability until he was sixty-five. She also opined that Plaintiff would be able to do some work, considering his expertise in his field, with a little more pain relief. (Def.'s Appx. at 569-75).

On June 5, 2003, Janna Kerns, PT, performed an FCE of Crouch. During testing, she opined that he was not giving full effort. She opined that Crouch could lift from 15-20 pounds, but recommended against climbing stairs or a ladder, crawling, squatting, kneeling, static bending, or reaching overhead. She opined that Crouch should limit sitting, standing, and

---

[9] Used to control seizures, to treat the manic phase of bipolar disorder, and to help prevent migraine headaches. Medline Plus *at* http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202588.html.

walking. (Def.'s Appx. at 629-33).

On July 18, 2003, a medical reviewer, Dr. Schmidt, recommended that an occupational medicine independent medical exam ("IME") be done on Crouch. (Def.'s Appx. at 280). On August 18, 2003, Dr. Kyle Jones filled out an employment and impairment summary form for Plaintiff. He diagnosed Plaintiff with chronic pain syndrome and cervical intervertebral disc disease (multiple levels). He stated that the general length of absences for this condition is 3-6 months after surgery. Dr. Jones stated that Plaintiff could return to work at any time after September 25, 2003, with the following permanent limitations: 1) an ergonomically designed workstation, 2) no overhead reaching, 3) no crawling, and 4) no lifting/carrying (<5 lbs). (Def.'s at 637). On the same day he also filled out a disability evaluation for Plaintiff, which he based on his examination of Crouch and a review of his records and of a surveillance video of Plaintiff. It was his opinion that, while pain was subjective and he believed that Crouch "struggled with constant pain," neither the physical examination nor the surveillance video was consistent with someone suffering the levels of pain reported by Crouch. He opined that Crouch exhibited symptom magnification and poor effort during testing. He suggested that Plaintiff have a repeat mylogram and/or an EMG/Nerve Conduction Study to verify that his pain reports had no physical underpinnings. He opined that Plaintiff could return to work at his previous occupation, as long as the accommodations suggested on the impairment summary form were fulfilled. (Def.'s Appx. at 638-44).

Following the termination of Crouch's disability payments, his record was examined by Dr. Oyebode A. Taiwo, M.D. Dr. Taiwo stated that chronic pain syndrome is a diagnosis used for complaints of persistent pain with no obvious relationship between the amount of tissue

damage and the degree of pain and suffering.  Dr.  Taiwo reviewed Crouch's medical records, his IME and FCE, and the surveillance videotape.  He determined that the record showed that Plaintiff could perform sedentary to light work, although he might require a setting that allowed him to frequently alter his position.  (Def.'s Appx.  at 1038-41).  Dr.  Taiwo later examined more records from Dr.  Richard Jones's office, which he found showed that the Plaintiff has chronic but stable pain syndrome, which would not prevent sedentary to light work.  (Def.'s Appx.  at 1042-43).

  Crouch responds that Aetna abused its discretion in determining that he was able to perform all of the normal and regular duties of an Information Technology Manager, his position at the time he went on long term disability and at the time he was terminated from Anderson Worldwide.  Specifically, he asserts that the medical evidence does not show that he is able to work 16 hour days and 70 hour work weeks, travel, sit at his desk "for hours at a stretch,"  read and write highly detailed material, and "be relied on for sound judgment free of pain."  In support of these contentions, he relies on a job description which indicates that the job requires a willingness to travel and a knowledge of technical issues, as well as the ability to work with people and write business reports.  (Def.'s Appx.  at 654-68).  In further support he points out a physical demands analysis worksheet, filled out be Joy Bell Norris, who indicates that she is from Benefits/HR, which states that an "Exp.  Manager" position in Dallas, Texas requires 7 percent lifting, 10 percent reaching below shoulders, and 83 percent repetitive hand duties, which she indicates are "use of laptop, writing."  She indicated that the maximum weight required to lift, carry, and push and pull is 2 pounds and that 98 percent of the day was spent indoors.  She also indicated that the position required far and near vision, hearing, left and right

11

finger dexterity, depth perception, talking, mental alertness, repetitive or short cycle work, the ability to understand, remember, and carry out complex job instructions, the ability to maintain attention and concentration, the ability to attain set limits and standards, the ability to use judgment and make decisions, the ability to direct, control, and plan activities with others, the ability to influence people in their opinions, attitudes, and judgments, irregular hours, and variable types of work.  (Def.'s Appx. at 653).   He also cites a similar form filled out by Greg Haertling, Crouch's former supervisor.  On this form Haertling indicated that Crouch's job location varied, although he was based in Dallas.  He wrote that he was unsure how to fill out the first section of the form, but indicated that Crouch's position required 7 percent lifting, 10 percent reaching below shoulders, 30 percent repetitive hand motions to which he added "typing/writing," 30 percent sitting, 20-30 percent standing, and 10 percent walking.  He indicated that Crouch lifted and carried 1-5 pounds twice a day carrying his personal computer to and from the workplace.  He noted that the work environment contained the noises of multiple conversations.  He indicated that the job required near and far vision, hearing, talking, right and left finger dexterity, depth perception, high mental alertness, high stress/pressure, irregular hours, and a variable type of work.  (Def.'s Appx. at 671-72).  Attached to that document was a description of the Consulting Manager Position in the Technology Competency Group.   It indicated that the position required both technical and people skills, and that travel was required and could be up to 100 percent depending on the project.  (Def.'s Appx. at 673-75).

     Aetna responds that it reasonably based its determination on the Physical Demands Analysis Worksheets completed by Mr. Haertling (Def.'s Appx at 672) and Ms.  Norris. (Def.'s Appx. at 653).  It joins issue with the portion of Crouch's assertion that his job required sixteen

12

hour workdays. Aetna contends that sixteen hour days are mentioned neither in either Physical Demands Analysis Worksheets nor in Crouch's appeal letter. (*See* Def.'s Appx. at 1032-33). Although Crouch contends in his reply to Aetna's response that such evidence was in the administrative record, he has failed to identify the pages at which such evidence can be found.[10] *See Ragas*, 136 F.3d at 458.

Aetna contends that its determination that Crouch could perform his past job functions was reasonable, or, in the alternative, that a reasonable determination was made that Crouch could work as many hours as required for his past position.

This court is not at liberty to review Aetna's determination *de novo*. Rather, as related above, the standard generally requires that, as long as there is "some concrete evidence in the administrative record" to support the decision to deny benefits, the decision does not constitute an abuse of discretion. *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir.2001).

Because Aetna is both the insurer and the plan administrator, its determination is entitled to a modicum less deference. (*See* discussion *supra*). As noted above the record is replete with findings by several examiners that Crouch did not give maximum, consistent effort during testing, that he self-limited his performing of examination protocols and that he was observed to magnify his symptoms. In addition a number of the examiners had the benefit of reviewing Plaintiff's videotaped activities in arriving at their opinions.

On the other hand Crouch cites to the report of Dr. Evangeline Clayton, that "[she]

---

[10] The only evidence which describes Crouch's workday duration is found in his affidavit. (Pl.'s Appx. A at 2 ¶ 5) which clearly is not a part of the administrative record, and therefore may not be considered by the court. *E.g., Estate of Bolton*, 215 F.3d at 521.

13

[could] not see this patient returning to work in any capacity." (Def.'s Appx. at 1004). Plaintiff ignores the rest of Dr. Clayton's opinion that makes it plain that she believes that he is self-limiting from work and that, with proper psychological help for his pain pattern, a fairer picture of his disability could be determined. (Def.'s Appx. at 1001-1005).

The Fifth Circuit has concluded that it is not an abuse of discretion for a Plan Administrator to rely upon the conclusions of physicians who have reviewed a claimant's medical records without physically examining the claimant. *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 335 (5th Cir.2001). Here, Aetna relies in its determination on a number of evaluations, many of which were based on having physically examined Crouch.

When deciding whether an administrator's decision was arbitrary and capricious, the criterion which informs the determination is whether there was substantial evidence to support the administrator's decision. *See, e.g., Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 215 (5th Cir.1999). Therefore no abuse of discretion is shown, even if the claimant demonstrates substantial evidence in the administrative record to support his disability claim, or even that the evidence in the record preponderates in his favor. *See Ellis*, 394 F.3d at 273. In the present action Defendant has met its burden to establish that its decision terminating Plaintiff's long term disability benefits was based on substantial evidence. Accordingly, Defendant is entitled to summary judgment.

It is therefore ordered that Defendant Aetna Life Insurance Company's motion for summary judgment is granted.

Signed this 28th day of July, 2005.

_____
Wm. F. Sanderson, Jr.
United States Magistrate Judge